E-FILED
Friday, 02 July, 2021  05:32:37 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| DION MCNEAL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-1413 |
| | ) | |
| MCLEAN COUNTY BOARD; | ) | |
| MCLEAN COUNTY BOARD OF | ) | |
| HEALTH; JUDY BUCHANAN, | ) | |
| HANNAH EISNER, ALAN GINZBURG, | ) | |
| SCOTT HUME, ROBERT KOHLHASE, | ) | |
| SONJA REECE, CARLA POHL, | ) | |
| RICHARD GINNETTI, CORY TELLO, | ) | |
| CAMILLE RODRIGUEZ, JESSICA | ) | |
| MCKNIGHT, and MICHELLE BUTLER, | ) | |
| In Their Individual Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME, Defendants, MCLEAN COUNTY BOARD (the "County Board");

MCLEAN COUNTY BOARD OF HEALTH (the "Board of Health"); JUDY BUCHANAN

("Buchanan"); HANNAH EISNER ("Eisner"); ALAN GINZBURG ("Ginzburg"); SCOTT

HUME ("Hume"); ROBERT KOHLHASE ("Kohlhase"); SONJA REECE ("Reece"); CARLA

POHL ("Pohl"); RICHARD GINNETTI ("Ginnetti"); CORY TELLO ("Tello"); CAMILLE

RODRIGUEZ ("Rodriguez"); JESSICA MCKNIGHT ("McKnight"); and MICHELLE

BUTLER ("Butler") (collectively "Defendants"), by their attorneys Dunn Law Firm, LLP and

move to dismiss the Counts II, VI, and VII of the amended complaint filed by Dion McNeal ("McNeal").[1]  In support of their motion, the Defendants state as follows:

I.    INTRODUCTION

Recognizing the fatal deficiencies of their original complaint, Plaintiff has abandoned six (6) claims and removed Defendants CATHERINE METSKER; GERALD THOMPSON; JIM SOELDNER;  WILLIAM FRIEDRICH; RANDALL MARTIN; GEORGE O. WENDT; WILLIAM T. CAISLEY; LOGAN SMITH; ELIZABETH JOHNSTON; JOHN MCINTYRE; GEORGE GORDON; LAURIE WOLLRAB; JACOB BEARD; SHARON CHUNG; CARLO ROBUSTELLI; SHAYNA WATCHINSKI; LYNDSAY BLOOMFIELD, SUSAN SCHAFER; JOSH BARNETT; and CHUCK ERICKSON from his Amended Complaint.  In his Amended Complaint, Plaintiff adds few factual allegations mainly addressing the personal involvement of the remaining individual Defendants and his *Monell* claim.

Despite Plaintiff's efforts to correct the deficiencies of his original complaint, Counts II, VI, and VII of the Amended Complaint remain insufficiently pleaded.  Specifically, Plaintiff fails to state a claim of race discrimination and retaliation under 42 U.S.C. § 1981 against the individual Defendants in Count II and against the individual Defendants, the County Board and Board of Health in Count VI.  Additionally, Plaintiff's First Amendment retaliation claim against all Defendants should be dismissed for failure to state a claim.  Alternatively, the individual Defendants are entitled to qualified immunity.

---

[1] Defendants' understanding is that a partial motion to dismiss tolls the time to respond to unchallenged claims.  To the extent the Court requires a motion to extend the time to answer claims unchallenged by this motion, Defendants so move.

RELEVANT PROCEDURAL HISTORY

On November 29, 2020, Plaintiff filed his original complaint against the County Board, Board of Health and thirty-two (32) defendants.  On March 26, 2021, the Defendants moved to dismiss Counts I, III, IV, VI, VIII-XIII of Plaintiff's original complaint.  In lieu of a response to the motion to dismiss, Plaintiff was given leave to file his Amended Complaint.  Plaintiff's Amended Complaint was filed on May 6, 2021.  In his Amended Complaint, Plaintiff now brings seven (7) claims against fourteen (14) defendants:  a Title VII race discrimination claim against McLean County and the Health Department[2] in Count I, a § 1981 race discrimination claim against all individual Defendants in Count II, a *Monell* claim against the Board of Health and County Board in Count III, a Title VII sex discrimination claim against McLean County and the Health Department[3] in Count IV, a Title VII violation for unlawful retaliation against McLean County and the Health Department[4] in Count V, a § 1981 unlawful retaliation claim against all Defendants in Count VI, and a § 1983 First Amendment retaliation claim against all Defendants in Count VII.  Plaintiff's Amended Complaint excludes the members of the County Board as defendants, removes all state law claims and the redundant official capacity claims against the individual defendants.  Plaintiff has also abandoned his claims for conspiracy under § 1983 and § 1981.

FACTS AS ALLEGED IN THE COMPLAINT[5]

Plaintiff is a black male who was employed by the County and the Health Department as a communications specialist.  *Pl. Amended Compl.*, ¶ 5, 23.  Defendants Buchanan, Eisner,

---

[2] While brought against McLean County and the Health Department, Defendants assume Plaintiff brings the claim against the County Board and Board of Health as captioned in his Amended Complaint.
[3] See footnote 2.
[4] *Id.*
[5] For purposes of this Motion only, Defendants treat the factual allegations in Plaintiff's Complaint as true.

Ginzburg, Hume, Kohlhase, Reece, Pohl, Schafer, Ginnetti and Tello are or were Board of Health members. Defendant Rodriguez was the McLean County Administrator.  Defendant McKnight is the McLean County Health Department Administrator, and Defendant Butler was the Human Resources Manager for McLean County.  *Id.*, ¶¶ 6-22.  Defendant County Board is a local public entity and engaged in the management of McLean County.  *Id.*, ¶ 6.  Defendant Board of Health is a local government entity and engaged in the management of the McLean County Health Department.  *Id.*, ¶ 7.

As a communications specialist, Plaintiff's primary job duties included the following: social media management and website communications for the County; assistance with marketing for the McLean County Nursing Home and the McLean County Triage Center; coordination of media briefings for the McLean County Health Department and serving as the Public Information Officer for the Health Department.  *Id.*, ¶ 23, *Ex. A to Pl's Am. Compl.*, p.16. Plaintiff's job duties also included preparation of press releases upon the request of Rodriguez and the Assistant County Administrator.  *Id.*, ¶ 24.  As part of Plaintiff's job duties and at the suggestion of McKnight, Plaintiff prepared a press release for the Health Department in response to the killing of George Floyd which recognized racism as a public health crisis.  *Id.*, ¶ 27. Plaintiff claims he received verbal approval from McKnight to publish his draft or version of the press release and posted the press release to the Health Department's website and also sent the press release to McKnight and the media on June 10, 2020. *Id.*, ¶ 36.

Plaintiff asserts that despite having received approval from McKnight to publish the press release, he was reprimanded and had multiple job duties removed on June 11, 2020.  *Id.*, ¶ 38. On June 19, 2020, Plaintiff sent a written statement to County Board members, Health Board members, and several news outlets claiming that he had faced discrimination and retaliation as a

County employee and raising allegations of widespread racism and discrimination in the County. *Id*., ¶ 39.  Plaintiff was placed on paid administrative leave and was ultimately terminated from employment on June 23, 2020. *Id*., ¶¶ 41, 66. Plaintiff claims co-worker, Kari Jones, a white female, also caused a public statement to be issued on June 19, 2020 but was not terminated.  *Id*., ¶¶ 40, 41.

For purposes of this Motion, the June 19, 2020 letter ("Letter") is part of the Amended Complaint.  It was addressed and published to the members of the County Board, Board of Health, and several news outlets and was signed by Plaintiff as the Communication Specialist for McLean County.  An analysis of the Letter is particularly relevant to Defendants' move to dismiss Count VII.  The Letter constituted a complaint as to the manner in which he was disciplined for publishing the press release.

In particular:

- The Letter complained that Plaintiff's job responsibilities are being removed and replaced as a result of publishing the press release.

- The Letter provides that Plaintiff, as a representative of the Health Department is entrusted to compose written materials for publications or to be used as visual aids; prepare radio and television public service announcements, and present information via interviews with print, radio and television reports.

- The Letter complains that Plaintiff is no longer trusted to handle public facing activities and documentations because releasing the press release on June 9, 2020[6] did not represent the voice of the health department or the Board of Health.

---

[6] Plaintiff now asserts in his Complaint that the press release was published on June 10, 2020.

- The Letter complained that Plaintiff's voice is being silenced and he is being retaliated against by leadership's decisions and actions.

- The Letter complained about Plaintiff receiving disciplinary reprimands and warnings for publishing the June 9, 2020[7] press release.

- The Letter contends Plaintiff is being silenced for taking the actions that a Communication Specialist does when there is a public health crisis.

- The Letter complains that Plaintiff's leadership was showing a lack of support and professionalism in removing his job duties, and complains about his leadership's failure to adhere to the County's personnel policies and procedures in issuing the discipline and performing his evaluation.

- The Letter expresses strong criticism of Plaintiff's supervisors and County leadership, Rodriguez and McKnight.

- Plaintiff requests that the members of the County Board believe his story, allow him to keep his job and develop a system to protect employees like him.

The substantive nature of the Letter amounted to a complaint about the terms and conditions of Plaintiff's employment. In its simplest terms, the Letter was a varied complaint to Plaintiff's employer and to third-parties, contending that Plaintiff was being discriminated and retaliated against because of his race.

For the reasons set forth herein, the claims asserted in Counts II, VI, and VII of Plaintiff's Amended Complaint should be dismissed.

---

[7] *Id.*

6

II.     STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim "must give enough details about the subject matter of the case to present a story that holds together" to be plausible. *Swanson v. Citibank, N.A*., 614 F.3d 400, 404 (7th Cir. 2010).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. Fed.R.Civ.P. 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of actions, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atlantic Corp*. 550 U.S. at 555). Furthermore, a plaintiff can plead himself out of court "by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011), citing *Hecker v. Deere & Co*., 556 F.3d 575, 588 (7th Cir. 2009).

III.    ARGUMENT

   **A.     Plaintiff Cannot Maintain a Section 1981 claim in Counts II and VI.**

In Count II, Plaintiff asserts a claim of race discrimination against the Individual Defendants under 42 U.S.C. § 1981 ("Section 1981"), and in Count VI, Plaintiff asserts a claim

of unlawful retaliation against the Individual Defendants, the County Board and Board of Health under 42 U.S.C. § 1981.  The Section 1981 claims should be dismissed in their entirety against all Defendants because the Seventh Circuit has held that 42 U.S.C. § 1983 is the exclusive remedy for violations of Section 1981 committed by state actors.  *Campbell v. Forest Pres. Dist. of Cook Cty., Ill*., 752 F.3d 665, 671 (7th Cir. 2014), *see Jett v. Dallas Independent School Dist*., 491 U.S. 701 (1989).

The Supreme Court in *Jett* held that "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."  *Id*. at 733.  The Supreme Court has differentiated § 1981 and § 1983 claims, holding that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  *Jett*, 491 U.S. at 735.  In other words, when the statutory violation claimed by the plaintiff is a violation of a right provided by § 1981, a private party may sue the state actor for that statutory violation only under § 1983, not under § 1981; only private parties may be sued directly under § 1981. *Id*. ("The reasoning of *Jett* is equally applicable to § 1981 suits against state actors sued in their individual capacity.")  See also *McCormick v. Miami University*, 693 F.3d 654, 661 (6th Cir. 2012).

Here, Plaintiff appears to state his § 1981 claim in addition to, or as a claim distinct from, his section 1983 claim – not as a claim through § 1983 with its own distinct elements.  *See generally* Am. Compl., (Race-Based Discrimination, 42 U.S.C. § 1981 against the Individual Defendants); (Unlawful Retaliation, 42 U.S.C. § 1981 against all Defendants); (First Amendment Retaliation, 42 U.S.C. § 1983 against all Defendants); (Race-Based Discrimination, 42 U.S.C. §§ 1981 and 1983 against McLean County Board and McLean County Board of Health).  The language employed by Plaintiff throughout his Amended Complaint indicates a misapprehension

of *Jett* and its progeny. Because there can be no independent cause of action against either the County or the other defendants under § 1981, and Plaintiff does not properly plead a § 1981 claim through § 1983, the § 1981 claims must be dismissed pursuant to Rule 12(b)(6).

**B.     Because Plaintiff Fails to Allege Any Protected Speech, Count VII Should be Dismissed.**

As Plaintiff's alleged facts do not suggest that he engaged in constitutionally protected speech, he fails to state a claim under Count VII. "[W]hen a plaintiff brings a Section 1983 claim for retaliation in violation of First Amendment rights in the employment context," a Court must first "decide whether the employee speech was constitutionally protected." *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013). This threshold issue, "whether the employee's speech was constitutionally protected- is a question of law to be decided by the Court". *Id*. The same goes for the subsidiary considerations which supply the answer to that question, such as whether the plaintiff spoke as a private citizen on a matter of public concern, and whether the governmental interests served by suppression of the speech outweigh the interests of the employee in engaging in that speech. *Messman v. Helmke*, 133 F.3d 1042, 1046 (7th Cir. 1998).

As set forth below, neither the press release published on June 10, 2020 or the letter sent on June 19, 2020 constitutes a communication of a citizen on a matter of public concern; the former constitutes guidance to prevent the spread of COVID-19 released by the Health Department to the public as part of Plaintiff's official job duties and the latter a communication by an employee complaining about the terms and conditions of his employment.

i.     Plaintiff does not allege facts that he spoke as a private citizen on a matter of public concern.

The threshold inquiry for the Court is to determine whether Plaintiff spoke as an employee or as a private citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S.

410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). As a result of *Garcetti*, there is "an additional hurdle for plaintiffs to show at the outset regardless of the content of the speech in question, that the plaintiff was speaking as a citizen and not as a public employee." *McArdle v. Peoria School District No*. 150, 705 F.3d 751, 754 (7th Cir. 2013) ("In order for a public employee to raise a successful First Amendment claim for her employer's restriction of her speech, the speech must be in her capacity as a private citizen and not as an employee").

If Plaintiff spoke in his capacity as a Mclean County employee, or spoke on a matter that did not implicate public concern, the *Pickering* balancing test is not reached because the Constitution does not insulate the employee's communications from employer discipline. *Id*. at 421-22. To determine whether Plaintiff was speaking as a citizen, the Court must examine whether Plaintiff's speech owed it existence to his professional responsibilities as a public employee. *Garcetti*, 547 U.S. at 418, 421-22. If the speech owes its existence to the employee's professional responsibilities, the employee is not speaking as a citizen; if the speech does not derive from the speaker's employment, the employee is speaking as a citizen. *See id*. For example, in *Pickering*, a school teacher wrote a letter to a newspaper that addressed a proposed tax increase and was critical of the local school board's past handling of revenue. *Pickering*, 391 U.S. at 564-67. Because the letter "had no official significance and bore similarities to letters submitted by numerous citizens every day," it was protected speech under the First Amendment. *Garcetti*, 547 U.S. at 422; *Pickering*, 391 U.S. at 569-70.

Conversely, in *Garcetti*, a memorandum to supervisors written by an attorney was written pursuant to the attorney's job responsibilities and consequently, not protected. *Garcetti*, 547 U.S. at 413-15, 420-23 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe" the employee's First Amendment liberties). The

Supreme Court's holding in *Garcetti* has been applied in a variety of cases relevant to the instant case. For instance, in *Shehane v. County of Kankakee*, the court concluded that even when a citizen speaks out on an issue of general public concern while off-duty at a public meeting, if what the citizen says owes its existence to the citizen's public employment, then the citizen is speaking as an employee and the speech is not entitled to protection under the First Amendment. See 2008 WL 5274579 (C.D.Ill. Dec. 15, 2008) (public employee attended public hearing not related to her employment and was able to answer a question by virtue of her public employment; speech owed "its existence to her professional responsibilities" and was not protected). See also *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016)

Even if Plaintiff was speaking as a citizen, the Court must also consider whether Plaintiff was commenting on a matter of public concern. To determine whether speech addresses a matter of public concern, courts must address the context, form and content of the statement. *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684 (1983). The Court must also consider the choice of forum and motivation for speaking. *Cygan v. Wisconsin Dept of Corr.'s*, 388 F.3d 1092, 1099 (7th Cir. 2004).

The fact that an employee speaks on a matter that may be considered of public import does not automatically render the subject protected. *Bivens*, 491 F.3d at 561. The motive of the speaker is a relevant factor because speech intended to further a purely private interest will not be protected. *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999). The Seventh Circuit has explained that "a person's motive is not dispositive in the analysis of whether a communication discusses issues of public concern" and that a court must look to the "overall objective or point" of the speech. *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014).

For example, in *Bivens*, the court held that a union grievance regarding unhealthy levels of lead at a police shooting range, while potentially of interest to the public, was not protected. When the context and form of the speech was examined, it was clear that the speech was intended to address the officer's personal concerns.  *Id*.  Similarly, in *Kokkinis*, plaintiff's statements to a television interviewer accusing his chief of being vindictive were not protected even though the statements were made in the context of a news story covering sex discrimination.  *Kokkinis*, 185 F.3d at 844.

When a speaker's motives are mixed, "the speech will not be found to raise a matter of public concern if 'the overriding reason for the speech,'…appears to have been related to the speaker's personal interests as an employee."  *Hartman v. Bd. of Tr.'s of Comm. College Dist. No. 508, Cook County, Ill*., 4 F.3d 465, 471-72 (7th Cir. 1993) (quoting *Colburn v. Tr.'s of Indiana Univ*., 973 F.2d 581, 587 (7th Cir. 1992)); see also *Wright v. Ill. Dep.'t of Children & Family Serv.'s*, 40 F.3d 1492, 1501 (7th Cir. 1994) (noting that even when motivations for speaking are mixed, "we have attached some significance to the fact that a public employee's complaints about a subject within the scope of her job responsibilities is not acting simply as a member of the general public").

Thus, the Court must decide whether Plaintiff spoke as citizen when he issued the press release and published the Letter or whether Plaintiff's speech owed its existence to his responsibilities as a County employee.  If Plaintiff spoke as a citizen, the Court must also examine the speech, surrounding circumstances, and Plaintiff's motivation for speaking to determine if Plaintiff was commenting on a matter of public concern.

Plaintiff's claim that the press release, "Guidance to Prevent the Spread of COVID-19 At Protests, Rallies, & Mass Gatheirngs," constituted constitutionally protected speech is foreclosed

by *Garcetti*.  There are no facts alleged to suggest the statements contained in the press release were not made as part of Plaintiff's job duties.[8]  To the contrary, Plaintiff admits the press release was prepared at McKnight's suggestion, submitted to several Health Department employees for review, feedback and approval, and posted by Plaintiff to the County website, Facebook and the media after approval by McKnight.  This is nothing contained in the Amended Complaint that the press release went beyond Plaintiff's official duties as a communications specialist for the Health Department.[9]  As the speech was made at the direction of Plaintiff's supervisor and Plaintiff acted within his official duties, the speech was not protected as a matter of law.

While Plaintiff was under no duty to speak in his Letter, his speech fares no differently.  An application of the above principles demonstrates that the Letter is most accurately characterized as an overall employee grievance.  First, the form of the letter (addressed to the McLean County Board and Board of Health, and authored by Plaintiff as the Communication Specialist for McLean County) demonstrates that the letter was sent by Plaintiff in his capacity as an employee of the Health Department and County, not as a private citizen.

The context of the July 19, 2020 letter indicates that it was sent by Plaintiff as a part of a workplace grievance with his supervisors.  Plaintiff specifically alleges that the letter was sent in his capacity as a County employee and to redress race discrimination and retaliation he claims to have suffered in the workplace.  Plaintiff was communicating a workplace grievance to the County Board and Board of Health, complaining about several personnel issues with McKnight and Rodriguez.  While the letter was publicly disseminated and included comments on

---

[8] "In less than a week and a half from the release of "Guidance to Prevent Spread of COVID-19 At Protests, Rallies, & Mass Gatherings", my job responsibilities as a Communications Specialist are being removed and replaced.
[9] While not entirely clear, it appears that Plaintiff may have in fact abandoned his claim that the press release constituted constitutionally protected speech in his Amended Complaint.

widespread racial discrimination, its primary and intended audience was the County Board and Board of Health and the overall objective of the Letter was to oppose the discipline he received after issuing the press release.

The content of the Letter demonstrates that the point of the speech was to resolve Plaintiff's workplace grievances.  Plaintiff was complaining about perceived race discrimination and retaliation in the workplace.  Although race discrimination itself can certainly be an issue of public concern, the forum of Plaintiff's speech along with his purpose clearly indicate that his complaints of race discrimination were related to a private concern, not a broader societal concern.

As a matter of law, Plaintiff's speech seeking redress regarding the County's disciplinary process is not speech on a matter of public concern.  When the context, form and content of the speech are examined, it is clear that Plaintiff was complaining about the terms and conditions of his employment.  The speech occurred in the context of reporting what Plaintiff believed was discrimination and retaliation against him in the workplace to the County Board and Board of Health as a County employee. Because Plaintiff was protesting in his capacity as an employee, not as a citizen, his complaints related to his job.  *Taylor v. Carmouche*, 214 F.3d 788, 792 (7th Cir. 2000).

 ii. The balancing of interests favors Defendants.

Even if the Court concludes that Plaintiff's speech could survive *Garcetti's* and *Connick's* preliminary inquiries, the *Pickering* balancing dooms his case.  Under *Pickering*, the court must balance the employee's interest – as a citizen speaking on matters of public concern – with the government employer's legitimate interests in effectively performing its mission.  391 U.S. at 568, 88 S.Ct. 1731.  Governmental employer interest may, for example, take the form of

promoting integrity, maintaining proper discipline, encouraging efficiency, upholding public

trust, executing government functions, or advancing government policy.  *Garcetti*, 547 U.S. at

418-19, 126 S.Ct. 1951.  Though the government "has broader discretion to restrict speech when

it acts in its role as employer," any "restrictions it imposes must be directed at speech that has

some potential to affect" its operations.  *Id*. at 418, 126 S.Ct. 1951.

In *Volker v. Ryker*, 736 F.3d 1084 (7th Cir. 2013), the Court noted the *Pickering* factors

that should be considered when conducting the balancing of interests:  (1) whether the statement

would create problems in maintaining discipline by immediate supervisors or harmony among

co-workers; (2) whether the employment relationship is one in which personal loyalty and

confidence are necessary; (3) whether the speech impeded the employee's ability to perform his

daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the

underlying dispute arose; (6) whether the matter was one on which debate was vital to informed

decision making; and (7) whether the speaker should be regarded as a member of the general

public.

With respect to the first two factors, a government employer is allowed to consider "the

potential disruptiveness" of the employee's speech.  *Caruso v. DeLuca*, 81 F.3d 666, 670-71.

(7th Cir. 1996).  "When close working relationships are essential to fulfilling public

responsibilities, a wide degree of deference to the employer's judgment is appropriate."

*Connick*, 461 U.S. at 151-52.  Indeed, "[t]he public employer is not required to wait until those

working relationships actually disintegrate if immediate action might prevent such

disintegration." *Brewer v. Hart*, 909 F.2d 1035, 1040 (7th Cir. 1990).

Deference to the employer's judgment regarding the disruptive nature of an employee's

speech is especially important in the context of a communications specialist for a local public

15

health authority in the midst of the COVID-19 pandemic.  Local public health authorities, such as the County health department, were tasked with the enormous responsibility of developing strategies and plans to protect the public during a public health emergency.[10]  At a time when there was still no vaccine or approved treatment[11], or evidence that individuals were immune to a second infection[12], the County and its health department were on the front line working tirelessly to educate and assist the public in an effort to prevent the uncontrolled spread of COVID-19.

Because of the urgent and paramount public health and safety issues facing the County, there was a particularly urgent need for close teamwork among those involved in the County's COVID-19 response.  By Plaintiff's own account, he was in a leadership and public relations role tasked with handling media briefings, public service announcements and coordinating the County's COVID-19 response with leadership.  See Ex. A, Pl.'s Am. Compl.  The speech at issue, and particularly Plaintiff's publication of that speech to several media outlets, damaged his superiors' confidence in him and at least endangered their working relationship.  Plaintiff's statements criticizing the Health Department administrator and County administrator served to air Plaintiff's hostility towards his leadership and the County's COVID-19 response, and constituted a direct challenge to their authority and management at a time when the County was faced with responding to an unprecedented public health disaster.

Under the circumstances in this case, Plaintiff's employer was entitled to take action to remedy the disruption – both actual and potential- and the threat to departmental discipline and order caused by Plaintiff's speech in the midst of a worldwide pandemic.  In *Khuans v. School*

---

[10] See Gubernatorial Disaster Proclamation issued March 9, 2020, publicly available at:
https://www2.illinois.gov/sites/gov/Documents/CoronavirusDisasterProc-3-12-2020.pdf
[11] Dr. Caitlin Rivers, *Coronavirus Is Not Done With Us Until We Have A Vaccine for COVID-19:  Q & A*, USA Today (June 17, 2020), https://bit.ly/2UYc48b.
[12] Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection But Note for Long*, N.Y. Times (June 18, 2020), https://nyti.ms/2YTOAlZ,

*Dist. 110*, 123 F.3d 1010 (7th Cir. 1997), the Seventh Circuit acknowledged that an employee's statements questioning his supervisor in the presence of their superior and other co-workers created a potential problem in maintaining authority and discipline within the department." *Id*. at 1017.

In considering the *Pickering* factors, the County's interests as an employer outweighed Plaintiff's speech.

### C.     The Individual Defendants Are Entitled to Qualified Immunity.

Governmental actors performing discretionary functions enjoy qualified immunity, meaning that they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability…" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Qualified immunity "gives governmental officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011); *Noyola v. Tex. Dep't of Human Res*., 846 F.2d 1021, 025 (5th Cir. 1988) ("There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established constitutional rights.").

There are two prongs to the qualified immunity analysis.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  A government official will be protected by qualified immunity if either (1) the official has not violated the plaintiff's constitutional rights or (2) the right at issue was not clearly established at the time.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014).  The Court may consider the two questions in either order.  *Id*.

17

A plaintiff has the burden to prove that a constitutional right was clearly established. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). A plaintiff must accomplish this by pointing "to closely analogous cases demonstrating that the conduct is unlawful or demonstrating that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." A plaintiff does not have to point to a case directly in point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S.Ct. at 2083-84 (requiring "a robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Plaintiff claims he had a clearly established right to publish his Letter. This case therefore involves, on a general level, the First Amendment Right of a citizen to free speech. However, the Supreme Court has cautioned that for purposes of qualified immunity, courts must not analyze claims on a general level. *Ashcroft,* 131 S.Ct. at 2084 ("We have repeatedly told courts…not to define clearly established law at a high level of generality."); *Anderson v. Creighton*, 483 U.S. 635, 639-41 (1987). Instead, the Court must examine the rights claimed by Plaintiff in a "particularized" manner to determine whether the "contours" of the right are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Here, Plaintiff alleges that he had a right to be free from discipline after publicly airing a workplace grievance and criticizing his supervisors and County leadership to both its board members and the press. Defendants contend that no case establishes that it is unconstitutional for a government official to terminate an employee in these circumstances.

Finally, in deciding whether Defendants are entitled to qualified immunity, the Court must consider the outcome of the *Pickering* balancing test. If the parties' competing interests

made the outcome close, then the law was not so clear as to put reasonable officials on notice that terminating Plaintiff for his speech would violate the Constitution and Defendants are entitled to qualified immunity. *See Diaz-Bigio v. Santini*, 652 F.3d 45, 52 (1st Cir. 2011) ("[T]he defendants are entitled to summary judgment because the outcome of the *Pickering* balancing of interests in this case was not so clear as to put all reasonable officials on notice that firing [the plaintiff] would violate the law.").

The individual Defendants are also entitled to qualified immunity with respect to Plaintiff's Section 1981 and 1983 claims because it logically follows that Plaintiff cannot allege a violation of a clearly established right where he fail to allege a viable claim in the first instance. *Siegert v. Gilley*, 500 U.S. 226 (1991). As explained above, Plaintiff cannot maintain a Section 1981 claim or a Section 1983 claim against the Individual Defendants. Consequently, they are additionally entitled to the protection of qualified immunity as to such claims.

IV.    CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court grant their motion to dismiss with prejudice and grant any other relief it deems necessary and just.

Respectfully Submitted,

Defendants,

By:_____s/Carrie L. Haas_____
        Carrie L. Haas

Carrie L. Haas (Illinois Bar No. 6281053)
clh@dunnlaw.com
DUNN LAW FIRM LLP
1001 N. Main Street, Suite A
Bloomington, Illinois 61701
TEL:  309-828-6241
FAX:  309-828-8321

19

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following CM/ECF participants:

Ms. Nina R. Gougis                    Christopher Spanos, Co-Counsel for Defendants
Law Office of Nina R. Gougis          115 E. Washington St., Suite 401
411 Hamilton Blvd., Ste. 1928         Bloomington, IL 61701
Peoria, IL 61602                      TEL:  309-888-5110
ninagougislaw@gmail.com               chris.spanos@mcleancountyil.gov


  s/Carrie L. Haas


Carrie L. Haas Bar Number 6281053
Attorney for Defendants
Dunn Law Firm, LLP
1001 N. Main Street, Suite A
Bloomington, IL 61701
TEL:  309-828-6241
FAX: 309-828-8321
CLH@dunnlaw.com