E-FILED
Wednesday, 13 October, 2021  02:37:19 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| DION MCNEAL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-1413 |
| | ) | |
| MCLEAN COUNTY BOARD; | ) | |
| MCLEAN COUNTY BOARD OF | ) | |
| HEALTH; JUDY BUCHANAN, | ) | |
| HANNAH EISNER, ALAN GINZBURG, | ) | |
| SCOTT HUME, ROBERT KOHLHASE, | ) | |
| SONJA REECE, CARLA POHL, | ) | |
| RICHARD GINNETTI, CORY TELLO, | ) | |
| CAMILLE RODRIGUEZ, JESSICA | ) | |
| MCKNIGHT, and MICHELLE BUTLER, | ) | |
| In Their Individual Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS COUNT VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COME, Defendants, MCLEAN COUNTY BOARD (the "County Board");

MCLEAN COUNTY BOARD OF HEALTH (the "Board of Health"); JUDY BUCHANAN

("Buchanan"); HANNAH EISNER ("Eisner"); ALAN GINZBURG ("Ginzburg"); SCOTT

HUME ("Hume"); ROBERT KOHLHASE ("Kohlhase"); SONJA REECE ("Reece"); CARLA

POHL ("Pohl"); RICHARD GINNETTI ("Ginnetti"); CORY TELLO ("Tello"); CAMILLE

RODRIGUEZ ("Rodriguez"); JESSICA MCKNIGHT ("McKnight"); and MICHELLE

BUTLER ("Butler") (collectively "Defendants"), by their attorneys Dunn Law Firm, LLP and

1

move to dismiss the Count VII of the second amended complaint filed by Dion McNeal ("McNeal").[1]  In support of their motion, the Defendants state as follows:

I.      INTRODUCTION AND RELEVANT PROCEDURAL HISTORY

On November 29, 2020, Plaintiff filed his original complaint bringing thirteen (13) claims against the County Board, Board of Health and thirty-two (32) defendants.  On March 26, 2021, the Defendants moved to dismiss Counts I, III, IV, VI, VIII-XIII of Plaintiff's original complaint.  In lieu of a response to the motion to dismiss, Plaintiff was given leave to file his Amended Complaint.  Plaintiff's Amended Complaint was filed on May 6, 2021 with Plaintiff having abandoned six (6) claims and seventeen (17) defendants.   On July 2, 2021, the Defendants moved to dismiss Counts II, VI and VII of Plaintiff's Amended Complaint asserting that those counts remained insufficiently pleaded.  Plaintiff filed a response to the motion to dismiss on August 13, 2021.  After the motion to dismiss had been fully briefed, Plaintiff sought leave to file a Second Amended Complaint.  Plaintiff's Second Amended Complaint was filed on September 29, 2021.

Plaintiff now brings ten (10) claims against fourteen (14) defendants:  a Title VII race discrimination claim against McLean County and the Health Department[2] in Count I, a § 1981 race discrimination claim against all individual Defendants in Count II, a *Monell* claim against the Board of Health and County Board in Count III, a Title VII sex discrimination claim against McLean County and the Health Department[3] in Count IV, a Title VII violation for unlawful retaliation against McLean County and the Health Department[4] in Count V, a § 1981 unlawful

---

[1] Defendants' understanding is that a partial motion to dismiss tolls the time to respond to unchallenged claims.  To the extent the Court requires a motion to extend the time to answer claims unchallenged by this motion, Defendants so move.
[2] While brought against McLean County and the Health Department, Defendants assume Plaintiff brings the claim against the County Board and Board of Health as captioned in his Second Amended Complaint.
[3] See footnote 2.
[4] *Id.*

retaliation claim against all Defendants in Count VI, a § 1983 First Amendment retaliation claim against all Defendants in Count VII, and state law claims under the Illinois Human Rights Act in Counts VIII, IX and X.   Because Plaintiff's Second Amended Complaint revised Count II and VI to seek remedy through Section 1983 for the alleged Section 1981 violations, Defendants' motion addresses only Count VII and seeks dismissal on the basis that Plaintiff has failed to state a claim for retaliation under the First Amendment.

FACTS AS ALLEGED IN THE COMPLAINT[5]

Plaintiff is a black male who was employed by the County and the Health Department as a communications specialist.  *Pl. Second Amended Compl.*, ¶ 6, 24.  Defendants Buchanan, Eisner, Ginzburg, Hume, Kohlhase, Reece, Pohl, Schafer, Ginnetti and Tello are or were Board of Health members. Defendant Rodriguez was the McLean County Administrator.  Defendant McKnight is the McLean County Health Department Administrator, and Defendant Butler was the Human Resources Manager for McLean County.  *Id*., ¶¶ 7-23.  Defendant County Board is a local public entity and engaged in the management of McLean County.  *Id*., ¶ 7.  Defendant Board of Health is a local government entity and engaged in the management of the McLean County Health Department.  *Id*., ¶ 8.

As a communications specialist, Plaintiff's primary job duties included the following: social media management and website communications for the County; assistance with marketing for the McLean County Nursing Home and the McLean County Triage Center; coordination of media briefings for the McLean County Health Department and serving as the Public Information Officer for the Health Department.  *Id*., ¶ 24, *Ex. A to Pl's Am. Compl*., p.16. Plaintiff's job duties also included preparation of press releases upon the request of Rodriguez

---

[5] For purposes of this Motion only, Defendants treat the factual allegations in Plaintiff's Complaint as true.

and the Assistant County Administrator.  *Id*., ¶ 25.  As part of Plaintiff's job duties and at the suggestion of McKnight, Plaintiff prepared a press release for the Health Department in response to the killing of George Floyd which recognized racism as a public health crisis.  *Id*., ¶ 28. Plaintiff claims he received verbal approval from McKnight to publish his draft or version of the press release and posted the press release to the Health Department's website and also sent the press release to McKnight and the media on June 10, 2020. *Id*., ¶ 37.

Plaintiff asserts that despite having received approval from McKnight to publish the press release, he was reprimanded and had multiple job duties removed on June 11, 2020.  *Id*., ¶ 39. On June 19, 2020, Plaintiff sent a written statement to County Board members, Health Board members, and several news outlets claiming that he had faced discrimination and retaliation as a County employee and raising allegations of widespread racism and discrimination in the County. *Id*., ¶ 40.  Plaintiff was placed on paid administrative leave and was ultimately terminated from employment on June 23, 2020. *Id*., ¶¶ 42, 67. Plaintiff claims co-worker, Kari Jones, a white female, also caused a public statement to be issued on June 19, 2020 but was not terminated.  *Id*., ¶¶ 41, 42.

For purposes of this Motion, the June 19, 2020 letter ("Letter") is part of the Second Amended Complaint.  It was addressed and published to the members of the County Board, Board of Health, and several news outlets and was signed by Plaintiff as the Communication Specialist for McLean County.  The Letter constituted a complaint as to the manner in which he was disciplined for publishing the press release.

In particular:

-   The Letter complained that Plaintiff's job responsibilities are being removed and replaced as a result of publishing the press release.

4

- The Letter provides that Plaintiff, as a representative of the Health Department is entrusted to compose written materials for publications or to be used as visual aids; prepare radio and television public service announcements, and present information via interviews with print, radio and television reports.

- The Letter complains that Plaintiff is no longer trusted to handle public facing activities and documentations because releasing the press release on June 9, 2020[6] did not represent the voice of the health department or the Board of Health.

- The Letter complained that Plaintiff's voice is being silenced and he is being retaliated against by leadership's decisions and actions.

- The Letter complained about Plaintiff receiving disciplinary reprimands and warnings for publishing the June 9, 2020[7] press release.

- The Letter contends Plaintiff is being silenced for taking the actions that a Communication Specialist does when there is a public health crisis.

- The Letter complains that Plaintiff's leadership was showing a lack of support and professionalism in removing his job duties, and complains about his leadership's failure to adhere to the County's personnel policies and procedures in issuing the discipline and performing his evaluation.

- The Letter expresses strong criticism of Plaintiff's supervisors and County leadership, Rodriguez and McKnight.

- Plaintiff requests that the members of the County Board believe his story, allow him to keep his job and develop a system to protect employees like him.

---

[6] Plaintiff now asserts in his Complaint that the press release was published on June 10, 2020.
[7] *Id.*

5

The substantive nature of the Letter amounted to a complaint about the terms and conditions of Plaintiff's employment.  In its simplest terms, the Letter was a varied complaint to Plaintiff's employer and to third-parties, contending that Plaintiff was being discriminated and retaliated against because of his race.

For the reasons set forth herein, the claim asserted in Count VII of Plaintiff's Second Amended Complaint should be dismissed.

II.    STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  A plaintiff's claim "must give enough details about the subject matter of the case to present a story that holds together" to be plausible.  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint.  *Ashcroft*, 556 U.S. at 678.  Fed.R.Civ.P. 8 does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of actions, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Bell Atlantic Corp*. 550 U.S. at 555).  Furthermore, a plaintiff can plead himself out of court "by pleading facts that show that he has no legal claim."  *Atkins v. City of*

*Chicago*, 631 F.3d 823, 832 (7th Cir. 2011), citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009).

III.     ARGUMENT

      **A.     Because Plaintiff Fails to Allege Any Protected Speech, Count VII Should be Dismissed.**

As Plaintiff's alleged facts do not suggest that he engaged in constitutionally protected speech, he fails to state a claim under Count VII.  "[W]hen a plaintiff brings a Section 1983 claim for retaliation in violation of First Amendment rights in the employment context," a Court must first "decide whether the employee speech was constitutionally protected."  *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013).  This threshold issue, "whether the employee's speech was constitutionally protected- is a question of law to be decided by the Court".  *Id*. The same goes for the subsidiary considerations which supply the answer to that question, such as whether the plaintiff spoke as a private citizen on a matter of public concern, and whether the governmental interests served by suppression of the speech outweigh the interests of the employee in engaging in that speech.  *Messman v. Helmke*, 133 F.3d 1042, 1046 (7th Cir. 1998).

As set forth below, neither the press release published on June 10, 2020 or the letter sent on June 19, 2020 constitutes a communication of a citizen on a matter of public concern; the former constitutes guidance to prevent the spread of COVID-19 released by the Health Department to the public as part of Plaintiff's official job duties and the latter a communication by an employee complaining about the terms and conditions of his employment.

      i.     Plaintiff does not allege facts that he spoke as a private citizen on a matter of public concern.

The threshold inquiry for the Court is to determine whether Plaintiff spoke as an employee or as a private citizen on a matter of public concern.  *Garcetti v. Ceballos*, 547 U.S.

410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). As a result of *Garcetti*, there is "an additional hurdle for plaintiffs to show at the outset regardless of the content of the speech in question, that the plaintiff was speaking as a citizen and not as a public employee." *McArdle v. Peoria School District No*. 150, 705 F.3d 751, 754 (7th Cir. 2013) ("In order for a public employee to raise a successful First Amendment claim for her employer's restriction of her speech, the speech must be in her capacity as a private citizen and not as an employee").

If Plaintiff spoke in his capacity as a Mclean County employee, or spoke on a matter that did not implicate public concern, the *Pickering* balancing test is not reached because the Constitution does not insulate the employee's communications from employer discipline. *Id*. at 421-22. To determine whether Plaintiff was speaking as a citizen, the Court must examine whether Plaintiff's speech owed it existence to his professional responsibilities as a public employee. *Garcetti*, 547 U.S. at 418, 421-22. If the speech owes its existence to the employee's professional responsibilities, the employee is not speaking as a citizen; if the speech does not derive from the speaker's employment, the employee is speaking as a citizen. *See id*. For example, in *Pickering*, a school teacher wrote a letter to a newspaper that addressed a proposed tax increase and was critical of the local school board's past handling of revenue. *Pickering*, 391 U.S. at 564-67. Because the letter "had no official significance and bore similarities to letters submitted by numerous citizens every day," it was protected speech under the First Amendment. *Garcetti*, 547 U.S. at 422; *Pickering*, 391 U.S. at 569-70.

Conversely, in *Garcetti*, a memorandum to supervisors written by an attorney was written pursuant to the attorney's job responsibilities and consequently, not protected. *Garcetti*, 547 U.S. at 413-15, 420-23 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe" the employee's First Amendment liberties). The

8

Supreme Court's holding in *Garcetti* has been applied in a variety of cases relevant to the instant case. For instance, in *Shehane v. County of Kankakee*, the court concluded that even when a citizen speaks out on an issue of general public concern while off-duty at a public meeting, if what the citizen says owes its existence to the citizen's public employment, then the citizen is speaking as an employee and the speech is not entitled to protection under the First Amendment. See 2008 WL 5274579 (C.D.Ill. Dec. 15, 2008) (public employee attended public hearing not related to her employment and was able to answer a question by virtue of her public employment; speech owed "its existence to her professional responsibilities" and was not protected). See also *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016)

Even if Plaintiff was speaking as a citizen, the Court must also consider whether Plaintiff was commenting on a matter of public concern. To determine whether speech addresses a matter of public concern, courts must address the context, form and content of the statement. *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684 (1983). The Court must also consider the choice of forum and motivation for speaking. *Cygan v. Wisconsin Dept of Corr.'s*, 388 F.3d 1092, 1099 (7th Cir. 2004).

The fact that an employee speaks on a matter that may be considered of public import does not automatically render the subject protected. *Bivens*, 491 F.3d at 561. The motive of the speaker is a relevant factor because speech intended to further a purely private interest will not be protected. *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999). The Seventh Circuit has explained that "a person's motive is not dispositive in the analysis of whether a communication discusses issues of public concern" and that a court must look to the "overall objective or point" of the speech. *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014).

For example, in *Bivens*, the court held that a union grievance regarding unhealthy levels of lead at a police shooting range, while potentially of interest to the public, was not protected. When the context and form of the speech was examined, it was clear that the speech was intended to address the officer's personal concerns.  *Id*.  Similarly, in *Kokkinis*, plaintiff's statements to a television interviewer accusing his chief of being vindictive were not protected even though the statements were made in the context of a news story covering sex discrimination.  *Kokkinis*, 185 F.3d at 844.

When a speaker's motives are mixed, "the speech will not be found to raise a matter of public concern if 'the overriding reason for the speech,'…appears to have been related to the speaker's personal interests as an employee."  *Hartman v. Bd. of Tr.'s of Comm. College Dist. No. 508, Cook County, Ill*., 4 F.3d 465, 471-72 (7th Cir. 1993) (quoting *Colburn v. Tr.'s of Indiana Univ*., 973 F.2d 581, 587 (7th Cir. 1992)); see also *Wright v. Ill. Dep.'t of Children & Family Serv.'s*, 40 F.3d 1492, 1501 (7th Cir. 1994) (noting that even when motivations for speaking are mixed, "we have attached some significance to the fact that a public employee's complaints about a subject within the scope of her job responsibilities is not acting simply as a member of the general public").

Thus, the Court must decide whether Plaintiff spoke as citizen when he issued the press release and published the Letter or whether Plaintiff's speech owed its existence to his responsibilities as a County employee.  If Plaintiff spoke as a citizen, the Court must also examine the speech, surrounding circumstances, and Plaintiff's motivation for speaking to determine if Plaintiff was commenting on a matter of public concern.

Plaintiff's claim that the press release, "Guidance to Prevent the Spread of COVID-19 At Protests, Rallies, & Mass Gatheirngs," constituted constitutionally protected speech is foreclosed

by *Garcetti*.  There are no facts alleged to suggest the statements contained in the press release were not made as part of Plaintiff's job duties.[8]  To the contrary, Plaintiff admits the press release was prepared at McKnight's suggestion, submitted to several Health Department employees for review, feedback and approval, and posted by Plaintiff to the County website, Facebook and the media after approval by McKnight.  This is nothing contained in the Second Amended Complaint that the press release went beyond Plaintiff's official duties as a communications specialist for the Health Department.[9]  As the speech was made at the direction of Plaintiff's supervisor and Plaintiff acted within his official duties, the speech was not protected as a matter of law.

While Plaintiff was under no duty to speak in his Letter, his speech fares no differently. An application of the above principles demonstrates that the Letter is most accurately characterized as an overall employee grievance.  First, the form of the letter (addressed to the McLean County Board and Board of Health, and authored by Plaintiff as the Communication Specialist for McLean County) demonstrates that the letter was sent by Plaintiff in his capacity as an employee of the Health Department and County, not as a private citizen.

The context of the July 19, 2020 letter indicates that it was sent by Plaintiff as a part of a workplace grievance with his supervisors.  Plaintiff specifically alleges that the letter was sent in his capacity as a County employee and to redress race discrimination and retaliation he claims to have suffered in the workplace.  Plaintiff was communicating a workplace grievance to the County Board and Board of Health, complaining about several personnel issues with McKnight and Rodriguez.  While the letter was publicly disseminated and included comments on

---

[8] "In less than a week and a half from the release of "Guidance to Prevent Spread of COVID-19 At Protests, Rallies, & Mass Gatherings", my job responsibilities as a Communications Specialist are being removed and replaced.
[9] While not entirely clear, it appears that Plaintiff may have in fact abandoned his claim that the press release constituted constitutionally protected speech in his Second Amended Complaint.

widespread racial discrimination, its primary and intended audience was the County Board and Board of Health and the overall objective of the Letter was to oppose the discipline he received after issuing the press release.

The content of the Letter demonstrates that the point of the speech was to resolve Plaintiff's workplace grievances. Plaintiff was complaining about perceived race discrimination and retaliation in the workplace. Although race discrimination itself can certainly be an issue of public concern, the forum of Plaintiff's speech along with his purpose clearly indicate that his complaints of race discrimination were related and focused on his private concern, not a broader societal concern.

As a matter of law, Plaintiff's speech seeking redress regarding the County's disciplinary process is not speech on a matter of public concern. When the context, form and content of the speech are examined, it is clear that Plaintiff was complaining about the terms and conditions of his employment. The speech occurred in the context of reporting what Plaintiff believed was discrimination and retaliation against him in the workplace to the County Board and Board of Health as a County employee. Because Plaintiff was protesting in his capacity as an employee, not as a citizen, his complaints related to his job. *Taylor v. Carmouche*, 214 F.3d 788, 792 (7th Cir. 2000).

ii.      The balancing of interests favors Defendants.

Even if the Court concludes that Plaintiff's speech could survive *Garcetti's* and *Connick's* preliminary inquiries, the *Pickering* balancing dooms his case. Under *Pickering*, the court must balance the employee's interest – as a citizen speaking on matters of public concern – with the government employer's legitimate interests in effectively performing its mission. 391 U.S. at 568, 88 S.Ct. 1731. Governmental employer interest may, for example, take the form of

promoting integrity, maintaining proper discipline, encouraging efficiency, upholding public

trust, executing government functions, or advancing government policy.  *Garcetti*, 547 U.S. at

418-19, 126 S.Ct. 1951.  Though the government "has broader discretion to restrict speech when

it acts in its role as employer," any "restrictions it imposes must be directed at speech that has

some potential to affect" its operations.  *Id*. at 418, 126 S.Ct. 1951.

In *Volker v. Ryker*, 736 F.3d 1084 (7th Cir. 2013), the Court noted the *Pickering* factors

that should be considered when conducting the balancing of interests:  (1) whether the statement

would create problems in maintaining discipline by immediate supervisors or harmony among

co-workers; (2) whether the employment relationship is one in which personal loyalty and

confidence are necessary; (3) whether the speech impeded the employee's ability to perform his

daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the

underlying dispute arose; (6) whether the matter was one on which debate was vital to informed

decision making; and (7) whether the speaker should be regarded as a member of the general

public.

With respect to the first two factors, a government employer is allowed to consider "the

potential disruptiveness" of the employee's speech.  *Caruso v. DeLuca*, 81 F.3d 666, 670-71.

(7th Cir. 1996).  "When close working relationships are essential to fulfilling public

responsibilities, a wide degree of deference to the employer's judgment is appropriate."

*Connick*, 461 U.S. at 151-52.  Indeed, "[t]he public employer is not required to wait until those

working relationships actually disintegrate if immediate action might prevent such

disintegration." *Brewer v. Hart*, 909 F.2d 1035, 1040 (7th Cir. 1990).

Deference to the employer's judgment regarding the disruptive nature of an employee's

speech is especially important in the context of a communications specialist for a local public

health authority in the midst of the COVID-19 pandemic.  Local public health authorities, such as the County health department, were tasked with the enormous responsibility of developing strategies and plans to protect the public during a public health emergency.[10]  At a time when there was still no vaccine or approved treatment[11], or evidence that individuals were immune to a second infection[12], the County and its health department were on the front line working tirelessly to educate and assist the public in an effort to prevent the uncontrolled spread of COVID-19.

Because of the urgent and paramount public health and safety issues facing the County, there was a particularly urgent need for close teamwork among those involved in the County's COVID-19 response.  By Plaintiff's own account, he was in a leadership and public relations role tasked with handling media briefings, public service announcements and coordinating the County's COVID-19 response with leadership.  See Ex. A, Pl.'s Am. Compl.  The speech at issue, and particularly Plaintiff's publication of that speech to several media outlets, damaged his superiors' confidence in him and at least endangered their working relationship.  Plaintiff's statements criticizing the Health Department administrator and County administrator served to air Plaintiff's hostility towards his leadership and the County's COVID-19 response, and constituted a direct challenge to their authority and management at a time when the County was faced with responding to an unprecedented public health disaster.

Under the circumstances in this case, Plaintiff's employer was entitled to take action to remedy the disruption – both actual and potential- and the threat to departmental discipline and order caused by Plaintiff's speech in the midst of a worldwide pandemic.  In *Khuans v. School*

---

[10] See Gubernatorial Disaster Proclamation issued March 9, 2020, publicly available at: https://www2.illinois.gov/sites/gov/Documents/CoronavirusDisasterProc-3-12-2020.pdf
[11] Dr. Caitlin Rivers, *Coronavirus Is Not Done With Us Until We Have A Vaccine for COVID-19:  Q & A*, USA Today (June 17, 2020), https://bit.ly/2UYc48b.
[12] Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection But Note for Long*, N.Y. Times (June 18, 2020), https://nyti.ms/2YTOAlZ,

*Dist. 110*, 123 F.3d 1010 (7th Cir. 1997), the Seventh Circuit acknowledged that an employee's statements questioning his supervisor in the presence of their superior and other co-workers created a potential problem in maintaining authority and discipline within the department." *Id*. at 1017.

In considering the *Pickering* factors, the County's interests as an employer outweighed Plaintiff's speech.

IV.    CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court grant their motion to dismiss with prejudice and grant any other relief it deems necessary and just.

Respectfully Submitted,

Defendants,

By:            s/Carrie L. Haas_____
                    Carrie L. Haas

Carrie L. Haas (Illinois Bar No. 6281053)
clh@dunnlaw.com
DUNN LAW FIRM LLP
1001 N. Main Street, Suite A
Bloomington, Illinois 61701
TEL:  309-828-6241
FAX:  309-828-8321

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on October 13, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following CM/ECF participants:

| | |
|---|---|
| Ms. Nina R. Gougis | Christopher Spanos, Co-Counsel for Defendants |
| Law Office of Nina R. Gougis | 115 E. Washington St., Suite 401 |
| 411 Hamilton Blvd., Ste. 1928 | Bloomington, IL 61701 |
| Peoria, IL 61602 | TEL:  309-888-5110 |
| ninagougislaw@gmail.com | chris.spanos@mcleancountyil.gov |


   s/Carrie L. Haas




Carrie L. Haas Bar Number 6281053
Attorney for Defendants
Dunn Law Firm, LLP
1001 N. Main Street, Suite A
Bloomington, IL 61701
TEL:  309-828-6241
FAX: 309-828-8321
CLH@dunnlaw.com